## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 9:13-cv-80548-DMM

CONSUMER FINANCIAL PROTECTION
BUREAU,

       Plaintiff,

vs.

AMERICAN DEBT SETTLEMENT SOLUTIONS,
INC. and MICHAEL DIPANNI,

       Defendants.

_____/

### STIPULATED FINAL JUDGMENT AND ORDER

THIS CAUSE comes before the Court upon the Parties' Agreed Motion Requesting Entry of the Stipulated Final Judgment and Order (DE 3), filed May 30, 2013.  I have reviewed the Motion and the Record in this case, and I am otherwise fully advised in the premises.  The Consumer Financial Protection Bureau (the "Bureau") commenced this civil action on May 30, 2013, to obtain injunctive relief; civil money penalties; restitution; the disgorgement of ill-gotten monies; attorneys' fees and costs; and other relief from American Debt Settlement Solutions, Inc. ("ADSS") and Michael DiPanni ("DiPanni") (collectively, "Defendants") for alleged conduct in violation of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. pt. 310, and the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5481 *et seq.*

The parties, by and through respective counsel, agree to the entry of this Stipulated Final Judgment and Order ("Order"). Defendants have waived service of the Summons and Complaint.

Accordingly, it is hereby **ORDERED, ADJUDGED, and DECREED** as follows:

1

## **FINDINGS OF FACT**

**ADSS's Debt-Relief Services**

1.      ADSS is a Florida for-profit corporation that is located, resides, and does business in this district at 7601 N. Federal Hwy., # 2108, Boca Raton, Florida 33487.

2.      ADSS began doing business in late 2008. Since then, it has sold or offered to sell debt-relief services to consumers.

3.      In exchange for a fee, ADSS has promised to renegotiate, settle, reduce, or otherwise alter the terms of at least one debt between consumers and one or more of their unsecured creditors or debt collectors pursuant to a settlement agreement, debt-management plan, or other contractual agreement executed by a consumer.

4.      ADSS has marketed its debt-relief services via the Internet at http://www.americandebtss.com and received telephone calls from consumers in response to its Internet marketing efforts.

5.      As part of the consumer-enrollment process, ADSS has required that consumers complete detailed worksheets describing their monthly income (including income sources), expenditures, and debts. ADSS has then reviewed these worksheets with consumers before they enter into any debt-relief program.

6.      ADSS has enrolled consumers in debt-relief programs varying in length from 24 to 48 months by entering into contracts with them.

7.      Under the terms of ADSS's contracts with consumers, consumers have paid ADSS an "enrollment" fee in an amount calculated as a percentage—typically 15 percent—of the amount of the consumers' enrolled debts. Since its inception, ADSS has collected the majority of this "enrollment" fee in the first three to six months of a consumer's enrollment.

8.    Under the terms of ADSS's contracts with consumers, consumers also pay ADSS a "service" fee that is assessed on a monthly basis for the duration of the debt-relief program. This monthly service fee is typically between $49 and $99.

9.    ADSS's practice has been to request or receive fees in advance of settling at least one of a consumer's debts.

10.    ADSS entered into a contract with a dedicated-account provider ("Provider") for the management, processing, and administration of payments. Under this contract, the Provider has managed the dedicated account of each consumer who enrolled in an ADSS debt-relief program. Since its inception, ADSS has required and relied on assistance from the Provider to collect and disburse monies through the consumer's dedicated accounts.

11.    Upon enrollment in an ADSS debt-relief program, ADSS has directed consumers to sign up for a dedicated account with the Provider and to make monthly payments by ACH transfer into that account.

12.    With the consent of each enrolled consumer and when the consumer's account had a sufficient balance, ADSS would instruct the Provider to transmit funds to a consumer's creditors to help satisfy the consumer's debts.

13.    Since its inception and pursuant to its contracts with consumers, ADSS has directed the Provider to disburse payment amounts to and from consumers' dedicated accounts.

14.    Since its inception, ADSS has furnished the Provider with a copy of each contract that it entered into with consumers for its debt-relief program.

15.    The Provider has: (1) withdrawn funds from the consumer's bank account through ACH transfer and has deposited them into the dedicated account, and (2) transmitted funds from the dedicated account to itself and to ADSS to cover processing and servicing fees, including the

3

fee ADSS has charged the consumer for its debt-relief services. The Provider has managed the routine transfer of consumers' funds out of consumers' accounts to pay ADSS's debt-relief fees before any payments go to any creditors. ADSS and the Provider have also communicated directly about ADSS's fee structure.

16.     When consumers have closed their dedicated accounts, the Provider has typically refunded to consumers any money remaining in their dedicated accounts. Consumers typically have not received any refund of money paid in fees.

17.     Since its inception, ADSS has represented to all consumers that it will renegotiate, settle, reduce, or otherwise alter the terms of debts that consumers enroll in its program. For example, ADSS's form contract with consumers makes the following representations:

      a.   "Eliminate your unsecured debt sooner than you ever thought possible."

      b.   "Reduce your current monthly expense on debt service."

      c.   "[B]e off the debt treadmill and on the road to recovery."

18.     Since its inception, ADSS has failed to renegotiate, settle, reduce, or otherwise alter the terms of a single debt for approximately 89 percent of the consumers who enrolled in its debt-relief programs.

19.     In the welcome package provided to all consumers, ADSS has provided a list of "frequently asked questions," including, "How long does it take for my first settlement?" In response, ADSS has stated: "the first settlement could be in 90 days, or as much as six months."

20.     Since its inception, ADSS has rarely renegotiated, settled, reduced, or otherwise altered the terms of debts for consumers within six months of their enrollment.

21.     Since its inception, ADSS has had reason to know that it was nearly impossible for ADSS to renegotiate, settle, reduce, or otherwise alter the terms of debts under $700.

4

Nonetheless, it has been ADSS's practice to enroll consumers with debts under $700 in its program without disclosing this limitation.

22.    Since its inception, it has also been ADSS's practice to enroll consumers in its program even when ADSS has known that the consumers' incomes are inadequate to complete the debt-relief programs in which they are enrolled.

23.    Since ADSS's inception, consumers have deposited more than $9.9 million into their dedicated accounts, and ADSS has directed the Provider to make payments totaling less than $2 million to creditors in settlement of the consumers' debts. Most consumers have paid fees to ADSS but closed their dedicated accounts before their creditors received any payments in settlement of the consumers' debts.

24.    With respect to dedicated accounts that were established on or after October 27, 2010, the effective date of the TSR, and from which no creditors received payments through ADSS's debt-relief program, ADSS collected fees totaling $43,665.95.

25.    ADSS has collected fees on or after July 21, 2011, the effective date of 12 U.S.C. § 5536(a)(1), from consumers who, according to the information they provided to ADSS, had inadequate income to complete the debt-relief program in which they were enrolled.

**DiPanni's Role as Owner of ADSS**

26.    DiPanni is ADSS's owner. As owner, DiPanni has managed ADSS's day-to-day operations,  including ADSS's Internet marketing of debt-relief services, ADSS's interactions with consumers who signed up for those services, and ADSS's request and receipt of fees for the services. He also has engaged directly in debt-relief sales and customer-support functions on ADSS's behalf.

27.     DiPanni designed and implemented the debt-relief service fee structure through which ADSS charged fees in advance of settlement of at least one of a consumer's debts.

28.     DiPanni selected and hired the Provider on ADSS's behalf.

29.     Since ADSS's inception, DiPanni has known or should have known that ADSS represented that it could likely renegotiate, settle, reduce, or otherwise alter the terms of the debts of consumers enrolled in its debt-relief program; that ADSS represented to consumers that it could renegotiate, settle, reduce, or otherwise alter the terms of at least one debt within three to six months of enrollment; that ADSS enrolled consumers in its program who had debts under $700; and that ADSS enrolled consumers with inadequate income to complete a debt-relief program. In addition, DiPanni had authority to control these actions by ADSS.

## CONCLUSIONS OF LAW

1.     The Bureau has commenced this action under sections 1031(a), 1036(a)(1), 1054(a), and 1061 of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1), 5564(a), 5581, and under the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6102(c)(2), 6105(d).

2.     The Bureau is authorized to seek the relief that it has requested under 12 U.S.C. § 5564(a) and (b), including the authority to enforce the TSR as it applies to persons covered by the CFPA, 15 U.S.C. §§ 6102(c)(2), 6105(d); 12 U.S.C. § 5531(a).

3.     This Court has jurisdiction over the parties and subject-matter jurisdiction over the Bureau's claims because they are brought under Federal consumer-financial law, 12 U.S.C. § 5565(a)(1), present a federal question, 28 U.S.C. § 1331, and are brought by an agency of the United States, 28 U.S.C. § 1345.

4.      ADSS provides and offers a consumer-financial product or service that is covered by the CFPA. 12 U.S.C. § 5481(5)(A), (15)(A)(viii)(II). ADSS is therefore a "covered person" under the CFPA, 12 U.S.C. § 5481(6), and is subject to sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).

5.      DiPanni is ADSS's owner and is charged with managerial responsibility for ADSS. He approves, ratifies, endorses, directs, controls, and otherwise materially participates in the conduct of ADSS's affairs. DiPanni is a "related person" and a "covered person," 12 U.S.C. § 5481(25), who is liable for violations of sections 310.3 and 310.4 of the TSR, 16 C.F.R. §§ 310.3, 310.4, and sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).

6.      Venue is proper in this district because ADSS is located, resides, and does business here, and DiPanni resides and does business here. 28 U.S.C. § 1391(b); 12 U.S.C. § 5564(f).

7.      Since its inception, ADSS has provided a debt-relief service to consumers and acted as a seller subject to the TSR.

8.      ADSS's acts or practices violate the TSR, 16 C.F.R. § 310.4(a)(5)(i), because, from October 27, 2010 to February 28, 2013, ADSS charged fees in consideration for debt-relief services in advance of settling consumers' debts. These acts or practices violate sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1). DiPanni is liable for violating sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).

9.      ADSS's acts or practices are deceptive acts or practices in telemarketing that violate the TSR, 16 C.F.R. § 310.3(a)(1)(ii), because, from late 2008 to February 28, 2013, ADSS routinely failed to disclose the material restriction, limitation, or condition that it is nearly

7

impossible for ADSS to renegotiate, settle, reduce, or otherwise alter the terms of debts under $700. These deceptive acts or practices violate sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).

10.     ADSS's acts or practices are also deceptive acts or practices in telemarketing that violate the TSR, 16 C.F.R. § 310.3(a)(2)(ii), (x), because, from late 2008 to February 28, 2013, ADSS routinely represented, directly or indirectly, expressly or by implication, that it will likely renegotiate, settle, reduce, or otherwise alter the terms of consumers' debts within the first three to six months after consumers enroll in a debt-relief program with ADSS although, in truth, ADSS is not likely to do so. These deceptive acts or practices violate sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1). DiPanni is liable for violating sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).

11.     ADSS's acts or practices are deceptive acts or practices in telemarketing that violate the TSR, 16 C.F.R. § 310.3(a)(2)(iii), (x), because, from late 2008 to February 28, 2013, ADSS has represented directly or indirectly, expressly or by implication, that it will likely renegotiate, settle, reduce, or otherwise alter the terms of debts for consumers who enroll in its debt-relief programs when, in truth, ADSS is not likely to do so. These deceptive acts or practices violate sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).

12.     ADSS's acts or practices are abusive acts or practices that violate the CFPA, 12 U.S.C. § 5536(a)(1)(B), because, from late 2008 to February 28, 2013, ADSS has knowingly enrolled in its debt-relief programs consumers whose financial conditions make it highly unlikely that they can complete the programs, and ADSS has nonetheless collected fees from consumers who had inadequate income to complete their debt-settlement programs. These abusive acts or practices violate sections 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a),

5536(a)(1)(B). DiPanni is liable for violating sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).

13.     Defendants waive all rights to seek judicial or appellate review or otherwise challenge or contest the validity of this Order. Defendants also waive any claim that they may have held under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order.

## ORDER

### I.     Ban on Debt-Relief Products and Services

IT IS HEREBY ORDERED that Defendants, whether acting directly or through any other person, are permanently restrained and enjoined from:

a. Advertising, marketing, promoting, offering for sale, or selling any debt-relief product or service; and

b. Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any debt-relief product or service.

### II.    Equitable Relief and Damages

IT IS FURTHER ORDERED that a judgment for equitable monetary relief and damages is hereby entered in favor of the Bureau and against Defendants, jointly and severally, in the amount of four hundred and ninety-nine thousand two hundred and forty-seven dollars and ninety-six cents ($499,247.96); provided, however, that full payment of this judgment shall be suspended upon satisfaction of the obligations set forth in Section III of this Order, and subject to Section IV of this Order.

Any funds received by the Bureau in satisfaction of this judgment shall be deposited into a fund or funds administered by the Bureau or its agent in accordance with applicable statutes and regulations to be used for redress for injured consumers, including, but not limited to, refund of moneys, restitution, damages, or other monetary relief, and for any attendant expenses for the administration of any such redress.

If the Bureau determines, in its sole discretion, that providing redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, the Bureau may apply any remaining funds for such other equitable relief (including consumer information remedies) as determined to be reasonably related to the violations described in this Order. Any funds not used for such equitable relief shall be deposited in the U.S. Treasury as disgorgement. Defendants shall have no right to challenge the Bureau's choice of remedies under this Section, and shall have no right to contest the manner of distribution chosen by the Bureau.

Redress provided by Defendants shall not limit consumers' rights in any way.

### III.    Civil Money Penalty

IT IS FURTHER ORDERED that by reason of Defendants' practices alleged in the Complaint from late 2008 to February 28, 2013, the appropriateness of the penalty with respect to Defendants' financial resources, Defendants' good-faith cooperation with the Bureau's investigation, the gravity of Defendants' conduct, the severity of the risks to and losses experienced by consumers, the history of previous violations by Defendants, and such other matters as justice may require, judgment for a civil penalty is entered under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), against Defendants and in favor of the Bureau in the amount of fifteen thousand dollars ($15,000.00), which Defendants shall pay to the Bureau by wire transfer

within ten (10) days of the Court's entry of this Order, pursuant to instructions to be provided by a representative of the Bureau. Defendants shall not be obligated to make such payment until the Bureau provides complete account instructions on where to pay such funds. The Bureau will deposit those funds into the Civil Penalty Fund administered by the Bureau under section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

The civil penalty shall be treated as a penalty paid to the government for all purposes, including all tax purposes. Regardless of how the Bureau ultimately uses those funds, Defendants shall not:

- Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made pursuant to any insurance policy, with regard to any civil penalty amounts that Defendants pay pursuant to this Order,

- Claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendants pay pursuant to this Order.

For purposes of this Section, a "Related Consumer Action" means a private action, or enforcement action by another governmental entity, brought against Defendants based on substantially the same facts as alleged in the Complaint in this action.

To preserve the deterrent effect of the civil penalty, in any Related Consumer Action Defendants shall not argue that they are entitled to, nor shall they benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action by the amount of any part or all of Defendants' payment of a civil penalty in this action ("Penalty Offset").

11

If the court in any Related Consumer Action grants such a Penalty Offset, Defendants shall, within thirty (30) days after entry of a final order granting the Penalty Offset, notify the Bureau's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to the Civil Penalty Fund, as the Bureau directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this action.

In the event of any default on Defendants' obligations to make payment under this Order, interest, computed pursuant to 28 U.S.C. § 1961, as amended, shall accrue on any outstanding amounts not paid from the date of default to the date of payment, and shall immediately become due and payable.

Defendants shall relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds shall be returned to Defendants.

In accordance with 31 U.S.C. § 7701, Defendants, unless they already have done so, shall furnish to the Bureau their taxpayer identifying numbers, which shall be used for purposes of collecting and reporting on any delinquent amounts arising out of this Order.

Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Defendants shall notify the Bureau of the final judgment, consent order, or settlement in writing. That notification shall indicate the amount of redress, if any, that Defendant  paid or is required to pay to consumers and should describe the consumers or classes of consumers to whom that redress will be paid.

Pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C.

§ 168lb(a)(1), any consumer reporting agency may furnish a consumer report concerning any Defendant to the Bureau, which shall be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

### IV.    Right to Reopen

IT IS FURTHER ORDERED that the Bureau's agreement to, and the Court's approval of, this this Order is expressly premised on the truthfulness, accuracy, and completeness of Defendants' financial statements and any supporting documents submitted to the Bureau on or about November 26, 2012, which Defendants assert are truthful, accurate, and complete. If, upon motion by the Bureau, the Court finds that either of the Defendants has failed to disclose any material asset or that the financial statement of either Defendant contains any material misrepresentation or omission, including materially misstating the value of any asset, then this Order shall be reopened and the Court shall terminate the suspension of the monetary judgment entered in Section II. The Court, without further adjudication, shall reinstate the judgment entered in Section II of this Order and the full amount of four hundred and ninety-nine thousand two hundred and forty-seven dollars and ninety-six cents ($499,247.96) will become immediately due and payable.

*Provided, however*, that in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court; and, *provided further*, that proceedings instituted under this provision would be in addition to, and not in lieu of any other civil or criminal remedies as may be provided by law, including any other proceedings that the Bureau may initiate to enforce this Order. For purposes of this Section, Defendants waive any right to contest any of the allegations in the Complaint.

Upon any reinstatement of the monetary judgment pursuant to this Section, the Court shall make an express determination that the monetary judgment shall be immediately due and payable. The Bureau shall be entitled to interest on the judgment, computed from the date of entry of this Order, at the rate prescribed by 28 U.S.C. § 1961, as amended, on any outstanding amounts not paid. The Bureau shall be permitted to execute on the judgment immediately after the suspension is lifted and engage in discovery in aid of execution.

## V.    Cooperation with Bureau Counsel

IT IS FURTHER ORDERED that Defendants shall, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of the Complaint, cooperate in good faith with the Bureau and appear at such places and times as the Bureau shall reasonably request, after written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the Bureau.

## VI.    Compliance Monitoring

IT IS FURTHER ORDERED that, for a period of two (2) years from the date of entry of this Order, ADSS agrees to be subject to the Bureau's supervisory authority under 12 U.S.C. § 5514.

## VII.    Compliance Reporting

IT IS FURTHER ORDERED that, for a period of two (2) years from the date of entry of this Order, the Defendants must submit a compliance notice, sworn under penalty of perjury, within fourteen (14) days of:

    a.  for ADSS, any change in: (i) any designated point of contact; (ii) the structure of ADSS that may affect compliance obligations arising under this Order, including:

14

creation, incorporation, or other organization; a dissolution, assignment, sale, merger, or other action; or a change in the business name or address.

b.  for DiPanni, any change in: (i) name, including aliases or fictitious names, or residence address; or (ii) title or role in any business activity, including any business for which DiPanni performs services whether as an employee, officer, or otherwise, and any entity in which DiPanni has any ownership interest, and identify its name, physical address, and Internet address, if any.

Each Defendant must also submit to the Bureau notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against such Defendant within fourteen (14) days of its filing.

For purposes of this Order, Defendants shall, unless otherwise directed by the Bureau's authorized representatives, send by overnight delivery all reports and notifications required by this Order to the Bureau to the following address:

> Assistant Director for Enforcement
> Consumer Financial Protection Bureau
> ATTENTION: Office of Enforcement
> 1700 G Street, N.W.
> Washington D.C. 20552
> RE: Bureau v. ADSS, Matter No. 12-0001-02

In lieu of overnight courier, Defendants may send such reports or notifications by first-class mail, but only if Defendants contemporaneously send an electronic version of such report or notification to the Bureau at Enforcement@cfpb.gov.

## VIII.  Direct Communications

IT IS FURTHER ORDERED that, for purposes of Section V of this Order, the Bureau is authorized to communicate directly with ADSS.

### IX.    Recordkeeping

IT IS FURTHER ORDERED that, for a period of two (2) years from the date of entry of this Order, ADSS must maintain the following Records:

a.  accounting records showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

b.  personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name, addresses, telephone numbers, job title or position, dates of service, and, if applicable, the reason for termination;

c.  customer files containing the names, addresses, phone numbers, dollar amounts paid, to the extent such information is obtained in the ordinary course of business;

d.  complaints and refund requests (whether received directly, indirectly, or through any third party) and any responses to those complaints or requests;

e.  copies of all sales scripts, training materials, advertisements, direct mail solicitations, contracts sent to consumers, or other marketing materials; and

f.  all records and documents necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.

### X.    Acknowledgement of Receipt of Order

IT IS FURTHER ORDERED that Defendants, within ten (10) business days of receipt of this Order as entered by the Court, must submit to the Bureau a truthful sworn statement acknowledging receipt of this Order.

### XI.    Retention of Jurisdiction

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this __6__ day of

June, 2013.

                                      DONALD M. MIDDLEBROOKS
                                      UNITED STATES DISTRICT JUDGE

Copies to:     Counsel of Record